**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| RUSSELL C. HOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 08-CV-4068-C-NKL |
| v. | ) | |
| | ) | |
| UNITED PARCEL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Russell C. Hogan ("Hogan"), by the undersigned attorneys, makes the following averments:

1.      This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 - 4333 ("USERRA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 38 U.S.C. § 4323(b).

3.      Venue is proper in this district under 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b).  Defendant, United Parcel Service ("UPS"), owns and operates a business that maintains a place of business in this judicial district.  Additionally, a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

4.      Hogan resides in Otterville, Missouri, which is within the jurisdiction of this Court.

5.      UPS is a Delaware corporation, headquartered in Atlanta, Georgia, and maintains a place of business within this district.

## COUNT I (DISCRIMINATION)

6.      In 1988, Hogan enlisted in the Air Force Reserve ("Reserve") as a senior in high school.  Over his nineteen year career, Hogan rose to Senior Master Sergeant (E8), the second highest rank available to enlisted personnel, in 2004.

7.      Hogan began working for UPS at its Sedalia, Missouri terminal as a part-time package handler in 1992.  Hogan eventually became a full-time feeder driver at UPS, driving UPS tractor-trailer trucks between UPS' Sedalia terminal and another UPS terminal or terminals, delivering and picking up packages.

8.      On February 22, 2003, the Reserve notified Hogan that he was being activated for service in Operation Iraqi Freedom.

9.      On or about February 22, 2003, Hogan informed the manager at the UPS terminal in Sedalia, Laurice Phillips, that the Reserve had ordered him mobilized.  At the time of his mobilization, Hogan worked as a feeder driver at the UPS terminal in Sedalia.

10.     On February 24, 2003, Hogan reported for active duty at Whiteman Air Force Base.

11.     During Operation Iraqi Freedom, Hogan served in the aircraft maintenance group in the 442nd Fighter Wing, which fielded twelve A-10 Thunderbolt II air-to-ground combat

aircraft commonly referred to as "Warthogs." The 442nd was the first Air Force fighter squadron stationed in Iraq, and Hogan served in Iraq at a forward air base during the first stages of the Iraq ground campaign working to keep the Warthogs in the air providing close-air-support for U.S. troops in the Battle of Baghdad.

12.      On information and belief, about a month after Hogan reported for military service on February 24, 2003, UPS developed a plan to eliminate Hogan's feeder driver route, and the position that accompanied that route, while Hogan was away on military service.

13.      On information and belief, while Hogan was away on military service, UPS eliminated Hogan's feeder driver route, and the position that accompanied that route, in a series of steps designed to transfer parts of the work from the route formerly driven by Hogan as a feeder driver to other UPS drivers.

14.      On information and belief, while Hogan was away on military service, on or about the weekend of July 4, 2003, UPS completed the elimination of the feeder driver route formerly driven by Hogan, and the position that accompanied the route, by transferring the duty of hauling freight between Sedalia and Lenexa to a newly created feeder driver route originating in Columbia, Missouri.

15.      UPS' elimination of Hogan's feeder driver route, and the position that accompanied that route, was motivated, in part, by Hogan's military service and was therefore in violation of USERRA, 38 U.S.C. § 4311;

16.      Because of UPS's conduct, Hogan has suffered significant monetary damages, a loss of benefits, and a loss of opportunities in an amount to be proven later at trial.

## COUNT II (RE-EMPLOYMENT)

17. The United States hereby incorporates paragraphs 1 through 14 above as if fully set forth in this count.

18. On April 6, 2004, after serving in Operation Iraqi Freedom for more than a year, Hogan advised the new manager of his terminal, Donnell Wilson, that he would soon be released from active military duty and wanted re-employment at UPS.

19. On April 30, 2004, the Reserve granted Hogan an honorable discharge from active duty.

20. UPS refused to reemploy Hogan in his prior job in Sedalia, Missouri.

21. UPS advised Hogan that while he was serving in Iraq, UPS moved his job of feeder driver from Sedalia, Missouri to Columbia, Missouri, and assigned another employee to drive the route.

22. UPS also refused either to reemploy Hogan in his prior job as a feeder driver in Sedalia, Missouri or to assign him to work as a feeder driver out of Columbia, Missouri.

23. UPS advised Hogan that if he wanted to remain employed with UPS, Hogan had only three choices: 1) return to the job of package handler in Sedalia and earn approximately half as much per hour as he had earned as a feeder driver; 2) try to qualify for a position as a package car driver in Sedalia, also earning less than he had earned as a feeder driver; or 3) obtain another feeder driver route available in Lenexa, Kansas, which would require that Hogan commute over 200 miles and work more than 12 hours each day.

24. Hogan could not accept a position as a package handler because that would result in a drastic cut in pay. Hogan could not physically qualify as a package car driver due to a prior

military service-related injury. Accordingly, wanting to keep his job at UPS, Hogan accepted the third option of working at the UPS location in Lenexa, Kansas.

25.     Hogan commuted to Lenexa five days a week from April 9, 2004 until May 27, 2005.

26.     The commute to Lenexa, Kansas required Hogan to commute over 200 miles each day. The commute from Hogan's home to Sedalia, Missouri had been less than 26 miles each day. The commute from Hogan's home to Columbia, Missouri would have been approximately one-half as far as the commute to Lenexa, Kansas.

27.     UPS never offered Hogan a feeder driver position in Sedalia, Missouri or Columbia, Missouri.

28.     On May 27, 2005, Hogan left UPS, again on military leave.

29.     On October 13, 2005, Hogan resigned from UPS.

30.     UPS' refusal to reemploy Hogan as a feeder driver at either his former location in Sedalia, Missouri or its location in Columbia, Missouri, caused him to lose a benefit of his former position (*i.e.*, its location) and was therefore unlawful and in violation of USERRA, 38 U.S.C. § 4312;

31.     Because of UPS's conduct, Hogan has suffered significant monetary damages, a loss of benefits, and a loss of opportunities in an amount to be proven later at trial.

## PRAYER FOR RELIEF

WHEREFORE, Hogan prays that the Court enter judgment against UPS as follows:

32.     Declare that UPS' elimination of Hogan's position was motivated, in part, by his military service and was therefore in violation of USERRA, 38 U.S.C. § 4311;

33.     Declare that UPS' refusal to reemploy Hogan as a feeder driver at either UPS' location in Sedalia, Missouri or its location in Columbia, Missouri, caused him to lose a benefit of his former position (*i.e.*, its location) and was therefore in violation of USERRA, 38 U.S.C. § 4312;

34.     Require that UPS fully comply with the provisions of USERRA by offering to reemploy Hogan in a position of like pay, status and benefits as the position he would have been entitled to if he had not been called away on military service;

35.     Require that UPS fully comply with the provisions of USERRA by paying Hogan all amounts due to him for his loss of wages and any lost benefits caused by UPS's failure or refusal to comply with the provisions of this law;

36.     Enjoin UPS from taking any action against Hogan that fails to comply with the provisions of USERRA;

37.     Award Hogan prejudgment interest on the amount of lost wages and benefits found due; and

38.     Grant such other and further relief as may be just and proper.

Respectfully submitted,

GRACE CHUNG BECKER
Acting Assistant Attorney General
Civil Rights Division


BY:     */s/ John M. Gadzichowski*
     JOHN M. GADZICHOWSKI (WI Bar No. 1014294)
Acting Chief

*/s/ Karen Woodard*
*/s/ Jeffrey G. Morrison*
KAREN WOODARD (MD Bar - no number issued)
Deputy Chief
JEFFREY G. MORRISON (MO Bar No. 44401)
Senior Trial Attorney
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, NW
Patrick Henry Building, Room 4613
Washington, DC 20530
Telephone: (202) 353-1845
Facsimile: (202) 353-8961
Email: jeffrey.morrison@usdoj.gov

JOHN F. WOOD
United States Attorney

BY:     */s/ Charles M. Thomas*
Charles M. Thomas, Mo. # 28522
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3130
Facsimile: (816) 426-3165
E-mail: charles.thomas@usdoj.gov

Attorneys for Plaintiff Russell Hogan

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that today I served the foregoing **Complaint** on the counsel of the

defendant via U.S. first-class mail, postage prepaid, to the following address:

Jennifer Arendes, Esq.
Armstrong Teasdale LLP
One Metropolitan Square
St. Louis, Missouri 63102

Dated this 3rd Day of April, 2008

*/s/ Jeffrey G. Morrison*

JEFFREY G. MORRISON (MO Bar No. 44401)
Senior Trial Attorney
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, NW
Patrick Henry Building, Room 4613
Washington, DC 20530
Telephone: (202) 353-1845
Facsimile: (202) 353-8961
Email: jeffrey.morrison@usdoj.gov
